## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CRIMINAL DOCKET**

**VERSUS**                                                              **No. 10-154**

**DAVID WARREN, ET AL**                                          **SECTION "I"**


### ORDER AND REASONS

Defendant, Robert Italiano ("Italiano"), moves this Court to find that the superseding indictment improperly joins counts three and four with the superseding indictment's other counts. Italiano moves for a severance of counts 3 and 4 owing to the alleged prejudice he will suffer as a result of joinder. Because this Court finds that joinder is proper, that defendant has made an insufficient showing of prejudice, and that jury instructions will suffice to cure any potential prejudice that may arise during the course of the trial, the motion is **DENIED**.[1]

I.      BACKGROUND

This case concerns the alleged shooting and burning of Henry Glover in the immediate aftermath of Hurricane Katrina, the alleged obstruction into a federal investigation of those crimes, and the circumstances surrounding such events. The government's eleven-count superseding indictment charges five former and current New Orleans Police Department ("NOPD") officers in connection with these alleged crimes. The government has not alleged a conspiracy. Furthermore, no officer is charged in every count of the superseding indictment.

---

[1] One of Italiano's codefendants, David Warren, filed a motion to sever on August 6, 2010. The government responded on August 13, 2010. During a September 1, 2010 status conference, the Court ordered Warren, and any other defendant who chose to do so, to brief the issue of whether counts 3 and 4 are properly joined with the superseding indictment's other counts by September 9, 2010. In response to such order, Italiano filed the motion currently under consideration.

David Warren ("Warren") is charged in counts 1 and 2 of the superseding indictment. Count 1 charges that Warren, while acting under color of law as an NOPD officer, shot Henry Glover on or about September 2, 2005 without legal justification, willfully depriving Glover of the right to be free from the use of unreasonable force by a law enforcement officer.   The government alleges that such crime involved the use of a dangerous weapon and an attempt to kill, resulting in bodily injury to, and the death of, Henry Glover.  Count 2 charges that, on or about September 2, 2005, Warren possessed, carried, and discharged a rifle during the commission of the civil rights offense charged in count 1 and that such discharge caused Henry Glover's death.  The government further alleges that Henry Glover's death involved circumstances constituting murder.

Dwayne Scheuermann ("Scheuermann") and Gregory McRae ("McRae") are charged in counts 3 through 7.  Count 3 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, deprived EK and WT of the right to be free from the use of unreasonable force by law enforcement officers and caused bodily injury to EK and WT.

Count 4 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers, and while aiding and abetting one another, unreasonably seized WT's vehicle by burning it without legal justification, thereby depriving WT of the right to be free from an unreasonable search and seizure by law enforcement officers. Count 4 further alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 5 alleges that on or about September 2, 2005, Scheuermann and McRae, while acting under color of law as NOPD officers and without legal justification, while aiding and

abetting one another, burned Henry Glover's body, depriving Henry Glover's family of their rights to have access to the courts and to seek legal redress for a harm.  Count 5 also alleges that Scheuermann and McRae used fire and a dangerous weapon during the alleged offense.

Count 6 alleges that on or about September 2, 2005, Scheuermann and McRae aided and abetted one another in knowingly destroying evidence with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI").  Specifically, count 6 charges these defendants with burning a 2001 Chevrolet Malibu containing the body of Henry Glover with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting of Henry Glover by a NOPD officer.  Count 7 charges Scheuermann and McRae with aiding and abetting each other and using fire to commit the felonies alleged in counts 4, 5, and 6.

Count 8 charges both Italiano and Travis McCabe ("McCabe").  Count 8 alleges that on or about December 2, 2005, Italiano and McCabe, in relation to and in contemplation of a matter within the jurisdiction of the FBI, aided and abetted one another in knowingly altering, concealing, covering up, falsifying, and making entries in documents with intent to impede, obstruct, and influence the investigation and proper administration of a matter within federal jurisdiction.  Specifically, count 8 charges that Scheuermann and McRae authored and submitted a false and misleading official report with the intent to impede, obstruct, and influence the investigation of the September 2, 2005 shooting and burning of Henry Glover.

Count 9 alleges that on or about April 21, 2009, Italiano knowingly and willfully made materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) no report was written after the shooting by Warren on September 2, 2005; (2) no missing persons

3

reports were being generated after Hurricane Katrina; and (3) he was not aware of a connection between the September 2, 2005 shooting by Warren and the burning of a car and body behind the Patterson Road levee. Count 9 further alleges that when Italiano made such statements to the FBI, he knew that: (1) a report was written after the September 2, 2005 shooting by Warren; (2) a missing persons report was generated for Henry Glover; and (3) there was a connection between the Warren shooting and the burned car and body behind the Patterson Road levee.

Count 10 charges McCabe with knowingly and willfully making materially false statements and representations in a matter within the jurisdiction of the FBI when he told FBI agents investigating the shooting and burning of Henry Glover that: (1) he, in collaboration with Sergeant Purnella Simmons ("Sergeant Simmons"), wrote and typed the incident report that documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Linda Howard ("Officer Howard") with Sergeant Simmons before writing the incident report; and (3) the incident report submitted to the NOPD was true and accurate. Count 10 further alleges that when McCabe made such statements to the FBI he knew that: (1) he did not write the incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; and (3) the incident report submitted to the NOPD was false and inaccurate.

Count 11 charges that on or about July 31, 2009, McCabe knowingly made a material declaration under oath in a proceeding before a grand jury of the United States. Specifically, count 11 alleges that McCabe testified falsely that: (1) he, in collaboration with Sergeant Simmons, wrote the incident report which documented the September 2, 2005 shooting by Warren; (2) he interviewed Officer Howard before writing the report; (3) he did not connect the Warren shooting to the burned car on the Patterson Road Levee until it appeared in the newspaper; and (4) the incident report submitted to the NOPD was true and accurate. Count 11

4

further alleges that when McCabe made such statements he knew that: (1) he did not write an incident report in collaboration with Sergeant Simmons; (2) he did not interview Officer Howard; (3) he had been aware, since 2005 (prior to any media reporting), that the Warren shooting and the burned car on the Patterson Road Levee were connected; and (4) the incident report submitted to the NOPD was false and inaccurate.

II.    JOINDER

Italiano moves this Court to find that the superseding indictment improperly joins counts 3 and 4, which directly pertain to Scheueremann and McRae, with the superseding indictment's other counts.  Federal Rule of Criminal Procedure 8(b) which governs joinder of defendants, states:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

"Rule 8(b) does not require . . . that each defendant have participated in the same act or acts" in order for joinder of defendants to be proper.  United States v. Krenning, 93 F.3d 1257, 1266 (5th Cir. 1996) (citing United States v. Dennis, 645 F.2d 517, 520 (5th Cir. Unit B May 1981), abrogated in part by United States v. Lane, 474 U.S. 438 (1986)).  Instead, "All that is required is a series of acts unified by some substantial identity of facts or participants."  Id. (internal quotation marks omitted).[2]

---

[2] As the United States Court of Appeals for the Tenth Circuit recently explained, "Ultimately, [t]he test for a proper joinder is a common thread to each of the defendants, which may be established by common evidence as to various counts."  United States v. Caldwell, 560 F.3d 1202, 1212 (10th Cir. 2009) (alteration in original) (internal quotation marks and citation omitted).   The United States Court of Appeals for the Second Circuit applies "a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants

"Generally, the propriety of joinder under Rule 8 is to be judged from the allegations of the indictment, which for these purposes are assumed to be true." United States v. Whittington, 269 Fed. App'x 388 (5th Cir. Mar. 10, 2008) (quoting United States v. Chagra, 754 F.2d 1186, 1188 (5th Cir. 1985)) (internal quotation marks omitted). Nevertheless, the Fifth Circuit has acknowledged the power of district courts to look beyond the face of the indictment to determine whether joinder is proper. See, e.g., United States v. Kaufman, 858 F.2d 994, 1003 ("Joinder of defendants is proper under Rule 8(b) where the record, examined broadly, presents two conspiracies substantially interrelated by their facts and participants rather than two separate and distinct conspiracies.") More recently, the United States Court of Appeals for the Eleventh Circuit has held that, "[i]t is enough that when faced with a Rule 8 motion, the prosecutor proffers evidence which will show the connection between the charges." United States v. Dominguez, 226 F.3d 1235, 1241 (11th Cir. 2000). Accordingly, joinder is improper only when "the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joinder." Id.

"As a general rule, persons indicted together should be tried together . . . ." United States v. Valdez, 453 F.3d 252 (5th Cir. 2006) (internal quotation marks omitted). "The government need not allege a conspiracy in order to join defendants . . . ." Dennis, 645 F.2d at 520. As the United States Supreme Court has explained, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed 317 (1993). "Joint trials play a vital role in the criminal justice system" by "promot[ing] efficiency" and "avoiding the scandal and inequity of inconsistent verdicts." Id. (internal quotation marks and citation omitted). Accordingly, "The prerequisites

resulting from the joinder." United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (internal quotation marks and citation omitted).

for joinder are liberally construed in favor of joinder." United States v. Liveoak, 377 F.3d 859, 864 (8th Cir. 2004).

Italiano essentially makes three arguments regarding why joinder of counts 3 and 4 is improper. First, Italiano argues that joinder is improper because the government has not alleged a conspiracy among the codefendants in this case. This argument is unavailing. The Fifth Circuit has consistently held that "[t]he government need not allege a conspiracy in order to join defendants . . . ." Dennis, 645 F.2d at 520. Accordingly, the absence of a conspiracy charge in the superseding indictment does not impact this Court's joinder analysis.

Second, Italiano essentially argues that joinder is improper because there is no substantial identity of fact or participants that connects counts 3, 4, 8, and 9. Italiano argues that "[t]he accusations against McCrae [sic] and Scheurmann [sic] in counts 3 & 4 have no connection to the allegations of the indictment against Robert Italiano."[3] Describing the charges contained in counts 3, 4, 8 and 9 of the superseding indictment, Italiano states:

> In count 8, Mr. Italiano is accused of conduct pertaining to the writing of a police report relative to defendant David Warren having fired a shot at a person whom Warren reasonably believed was armed & hostile, and who was a threat to his safety and that of his partner. In count 9 Mr. I [sic] is accused of having made false statements to the FBI regarding his knowledge of certain aspects of the shooting by Warren, and of a missing persons report pertaining to Henry Glover. Counts 3 & 4 accuse McCrae [sic] & Scheurmann [sic] of violating the civil rights of "E.K. and W.T." (Count 3) and "W.T." (count 4). No assertion contained in Counts 8 & 9 connects Mr. I [sic] to the conduct alleged in Counts 3 & 4.[4]

Nevertheless, in the next breath Italiano acknowledges that:

> It is true that certain facts are common to counts 3 and 4 and counts 8 and 9. For example, it is a fact that Mr. Glover's body

---

[3] R. Doc. No. 190, pg. 1.
[4] R. Doc. No. 190, pgs. 1-2.

was transported from the area where he may have been shot by David Warren by the use of W.T.'s automobile, and it is also a fact that W.T. and E.K. were transported in the same automobile to the scene of the civil rights violation charged in count 3.  It is also a fact that count 4, the charge relative to the destruction of W.T.'s automobile, refers to the same car in which Mr. Glover's body was transported.

The Court concludes that joinder of counts 3 and 4 with counts 8 and 9 is proper because a substantial identity of facts or participants exists among such counts.  Krenning, 93 F.3d at 1266.  In addition to Italiano's acknowledgement of the factual overlap among such counts, the government observes that Italiano is charged in count 8 with obstructing a federal investigation into both the shooting of Henry Glover and the burning of his body.  The government further observes that "Italiano is charged in Count 9 with making false statements to the [FBI] regarding the shooting and burning of the car and body . . . ."[5]  Accordingly, the Court finds that joinder of counts 3 and 4 with counts 8 and 9 is proper.

Finally, Italiano argues that joinder is improper because "[t]he acts charged to McCrae [sic] and Scheurmann [sic] were not part of a common aim or goal relative to Mr. Italiano . . . ."[6]  In support of such argument, Italiano states that "when 'individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present.'"[7]  As noted above, the Court finds that a substantial identity of facts or participants exists among counts 3, 4, 8, and 9.  Accordingly, joinder is proper notwithstanding Italiano's assertion that the crimes alleged against him in counts 8 and 9 do not share a common aim with those alleged against Scheuermann and McRae in counts 3 and 4.

---

[5] R. Doc. No. 185, pg. 5 (emphasis added).
[6] R. Doc. No. 190, pg. 3.
[7] Id.

III.    SEVERANCE

Italiano also argues that this Court should sever counts 3 and 4 of the superseding indictment owing to the prejudice he will suffer if those counts are tried along with the superseding indictment's other counts.    Specifically, Italiano argues that "the inclusion at trial of Counts 3 and 4, in combination with recent filings by the government[8], [will] likely [have] the effect of smearing all defendants with the pernicious label of racism, thereby causing substantial prejudice to Mr. Italiano's right to a fair trial."  Nevertheless, Italiano has not directed this Court to any case in which a court found that severance was warranted owing to the possibility that a defendant may be prejudiced at trial by accusations of racism levied against his codefendants.

Federal Rule of Criminal Procedure 14(a) states:

> If the joinder of . . . defendants in an indictment . . . appears to prejudice a defendant or the government the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

As the Fifth Circuit has held, "If defendants have been properly joined, the district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable determination of guilt or innocence."  United States v. Bermea, 30 F.3d 1539, 1572 (5th Cir. 1997) (citing Zafiro v. United States, 506 U.S. 534, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993)).  Indeed, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts."  Zafiro, U.S. 534 at 541.  Furthermore, concerns of judicial

---

[8] On September 1, 2010, the government filed notices of intent to use 404(b) evidence with respect to David Warren and Gregory McRae.

9

economy can outweigh the prejudice a defendant suffers when properly joined with codefendants.  See United States v. Ellender, 947 F.2d 748, 754 (5th Cir. 1991).

Although Italiano does not identify it as such, he is essentially arguing that this Court should grant a severance because he will be unfairly prejudiced by spillover effect caused by the joinder of counts 3 and 4.  However, "[a] spillover effect, by itself, is an insufficient predicate for a motion to sever."  United States v. Hidalgo, No. 08-51161, 2010 WL 2782797 (5th Cir. July 12, 2010) (quoting United States v. Bieganowski, 313 F.3d 264, 287 (5th Cir. 2002)) (internal quotation marks omitted).  Furthermore, spillover "is best avoided by precise instructions to the jury on the admissibility and proper uses of the evidence introduced by the Government." United States v. Harrelson, 754 F.2d 1153, 1175 (5th Cir. 1985) (internal quotation marks and citations omitted).[9]  Accordingly, the Court finds that severance of counts 3 and 4 of the superseding indictment is not warranted.  If necessary, this Court can guard against the prejudicial effect of the codefendants' trial strategies on one another through tailored jury instructions.  Id. at 541.

Accordingly, **IT IS ORDERED** that Italiano's motion[10] is **DENIED**.

New Orleans, Louisiana, September 27th, 2010.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

[9] The Court will also address the race issue during its voir dire.
[10] R. Doc. No. 190.